**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT**

I, Chelsea Holliday, Special Agent with the Federal Bureau of Investigation, being duly sworn, state as follows:

**INTRODUCTION AND AFFIANT'S BACKGROUND**

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been employed in this capacity since 2018. I am currently assigned to the Louisville Division of the FBI and have primary investigative responsibility for white collar crimes and public corruption violations. I am trained and authorized to investigate the offenses alleged herein. Moreover, I am a federal law enforcement officer who is engaged in enforcing criminal laws, including 18 U.S.C. §§ 1343, 1349, and 1956, and I am authorized by the Attorney General to request a search and seizure warrant. Before becoming a Special Agent, I was employed as a deputy sheriff and investigative agent by the Brevard County Sheriff's Office in Florida. I have experience investigating public corruption and fraud violations and have been involved with investigations in which the subjects that committed public corruption and financial fraud violations were successfully prosecuted. In this capacity, I am responsible for investigating possible violations of federal criminal law, including 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. §§ 1956, 1957 (Money Laundering), and 18 U.S.C. § 2315 (Receipt of Stolen Money). As a federal law enforcement officer, I am authorized to execute search and seizure warrants issued under Rule 41 of the Federal Rules of Criminal Procedure.

2. This affidavit is submitted in support of the application made by the United States for a seizure warrant authorizing the seizure of $97,288.00 from Navy Federal Credit Union, 820 Follin Lane SE, Vienna, VA 22180, account 7142062921.

3. For the reasons stated herein, there is probable cause to believe that these monies are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, as proceeds

of violations of 18 U.S.C. §§ 1343 (Wire Fraud), 1349 (Conspiracy to Commit Wire Fraud), and 2315 (Receipt of Stolen Money), and pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1), as property involved in a violation of 18 U.S.C. §§ 1956, 1957 (Money Laundering, Transactional Money Laundering, and Money Laundering Conspiracy). The undersigned affiant therefore requests a warrant to seize this property that is subject to forfeiture pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 853(f).

4. The statements made in this affidavit are personally known to me, based upon my own observations, investigations, training, and experience, as well as information obtained from witnesses and other law enforcement agents and officers. Because this affidavit is made for the limited purpose of demonstrating probable cause for a seizure warrant, I have not included each and every fact known to me concerning this matter, but only those facts that I believe are necessary to support the requested warrant.

## **LEGAL BACKGROUND**

5. Relevant to this application, a person violates 18 U.S.C. § 1343, when he or she devises a scheme or artifice to defraud or obtains money or property by means of false or fraudulent pretenses, representations or promises, for the purpose of executing the scheme or artifice, and advances or carries out the scheme by transmitting any wire in interstate commerce, or by causing such wire to be transmitted. A person violates 18 U.S.C. § 1349, when he or she conspires with one or more parties to commit wire fraud.

6. Relevant to this application, a person violates 18 U.S.C. § 2315, when he or she receives, possesses, conceals, stores, barters, sells, or disposes of money exceeding $5,000 that had been stolen, unlawfully converted, or taken, with knowledge that the money had been stolen,

unlawfully converted, or taken.  A conspiracy to commit this offense is a violation of 18 U.S.C. § 371.

7. Relevant to this application, a person violates 18 U.S.C. § 1956, when he or she conducts or attempts to conduct a financial transaction with the proceeds from specified unlawful activities with the specific intent to promote the specified unlawful activity; evade taxes; conceal the nature, source, location, ownership, or control of proceeds; or avoid reporting requirements. A violation under 18 U.S.C. §§ 1343, 1349, or 2315 constitutes a "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7)(A). A person violates 18 U.S.C. § 1957, when he or she engages or attempts to engage in a monetary transaction with the proceeds of a specified unlawful activity in an amount greater than $10,000, through or to a financial institution. A person violates 18 U.S.C. § 1956(h), when he or she conspires to commit any offense under §§ 1956 or 1957.

8. Relevant to this application, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, the United States may pursue civil or criminal forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. §§ 1343, 1349, and 2315. In addition, pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1), the United States may pursue civil or criminal forfeiture of property involved in violations of 18 U.S.C. §§ 1956 and 1957 or property traceable to such property. *See United States v. Coffman*, 859 F. Supp. 2d 871, 875 (E.D. Ky. Apr. 16, 2012) ("Money laundering forfeiture is required for all property 'involved in' the crime, which can include clean or legitimate money that is comingled with tainted money derived from illicit sources.").

9. Property subject to forfeiture may be seized pursuant to a warrant based on probable cause pursuant to 18 U.S.C. § 981(b) for a civil seizure warrant and pursuant to 21 U.S.C. § 853(f) (by 18 U.S.C. § 982(b)(1)) for a criminal seizure warrant. Section 853(f) provides that a court may

issue a criminal seizure warrant when it "determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that a [protective] order under [21 U.S.C. § 853(e)] may not be sufficient to assure the availability of the property for forfeiture."

## STATEMENT OF PROBABLE CAUSE

10. The United States government is investigating both known and unidentified individuals for violations of, inter alia, 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1956 (Money Laundering), and 18 U.S.C. § 2315 (Receipt of Stolen Money) and conspiracy to commit each (18 U.S.C. § 371 (Conspiracy to Commit an Offense Against the United States), 18 U.S.C. §§ 1349 (Conspiracy to Commit Mail or Wire Fraud) and 1956(h) (Conspiracy to Commit Money Laundering) (collectively, the "Specified Federal Offenses"), involving a business email compromise scheme that targeted the Lexington-Fayette Urban County Government (hereafter, "the City of Lexington" or "the City") and other victims throughout the United States and abroad.

11. On August 10, 2022, an official who works for the City, received an email from someone whom he believed to be affiliated with a known nonprofit organization, the [Victim Non-Profit] ▆▆▆▆▆▆ (hereafter [Victim NP]"). A subsequent email on August 12, 2022, requested that the City official change the bank account information used for sending government funds to the nonprofit organization. The City official who received the email, believing it to be legitimate, forwarded the email to the City's finance department, which changed [Victim NP]'s banking information to a new account with Truist Bank account ending in 0109, as requested.

12. After the bank account information was changed, the City sent subsequent wires to [Victim NP]'s purportedly new (fraudulent) account with Truist Bank, with an account number ending in 0109. From August 19 through August 24, 2022, the City wired a total of $3,905,837.05 to Truist

Bank account *0109. On August 25, 2022, the City of Lexington realized it was the victim of a business email compromise (BEC) scam and reported it to their bank and law enforcement. Ultimately, the City's payments to the subjects were all reversed by Truist Bank.

13. City officials conducted their own investigation into the fraud and realized the emails sent by the scammers had domains that were slightly different than the legitimate City or [Victim NP] email domains, as listed below:

City legitimate domain: lexingtonky.gov

City scammer domain: lexingtonkygov.com

[Victim NP] legitimate domain: [Victim NP Domain].org

[Victim NP] scammer domain: [Victim NP Domain + "c"].org

14. According to records provided by the City, account ███@[Victim NP Domain + "c"].org sent emails on August 10, 11, and 12, 2022, to officials with the City (with cc: to ███@[Victim NP Domain + "c"].org) with the subject line "4th Round."

15. According to information provided by the [Victim NP], emails were sent from account ███@lexingtonkygov.com to officials at the [Victim NP] (with cc: to ███@lexingtonkygov.com) on August 15, 2022, with the subject line "4th Round."

16. SHIMEA MARET MCDONALD (hereafter "McDonald"), an American woman living in Houston, TX, was the first subject identified as the first recipient of money obtained fraudulently from the City. In January 2023, McDonald was arrested by the FBI ███ she was hired by a Ghanaian man living in New York named NANA KWABENA AMUAH (hereafter "Amuah") to receive and launder money from the City. McDonald ███ had been laundering money for Amuah for a couple years prior as

well. McDonald ▇ communicated with Amuah via phone calls and encrypted private messaging applications.

17. Evidence was lawfully seized from McDonald including digital devices, financial records, and dozens of fake identification cards. The digital devices that were seized from McDonald were searched via lawful search warrants. Evidence obtained from these digital devices corroborated McDonald's ▇ work for Amuah. After McDonald's arrest ▇ ▇, the FBI obtained a criminal complaint for Amuah, and he was arrested by Customs and Border Protection in February 2023, as he tried to flee the country through the Canadian border.

18. ▇▇▇▇. Amuah ▇ was working for "Derick" (later identified as DERICK NII ASHITEY, hereafter "Ashitey"), a Ghanaian man located in the United Kingdom. Amuah ▇ was sometimes instructed by Ashitey to send money obtained via fraud to Ashitey's sister.

19. During the course of the BEC against the City, co-conspirators were communicating with each other over encrypted applications, including Telegram and WhatsApp. Two of the co-conspirators, Nana Amuah and Derick Ashitey, communicated over WhatsApp. ▇ Derick Ashitey as the individual who requested a business account at Truist for the purpose of receiving the City's stolen funds. Amuah provided account 0109, opened and operated by Shimea McDonald solely for fraud, to Ashitey.

20. Amuah, McDonald, and Ashitey are members of a criminal enterprise ("CE"), comprised of known and unknown individuals located in the United States, the United Kingdom, the Netherlands, and West Africa.

21. Bank records belonging to the known co-conspirators and subsequent interviews revealed that between 2021 and 2023, the CE defrauded over 100 businesses, municipalities, and individuals ("the victims") by convincing them to send substantial sums of money through compromised business emails. Specifically, in the majority of cases, the CE contacted these victims over email purporting to be an entity, usually a known vendor, to which each victim owed money. The CE used spoofed email accounts, in order to convince the victims of their legitimacy. Once a victim was convinced that the spoofed email account belonged to a legitimate vendor, the CE requested that the victims change bank account and routing information for vendor payments to new bank accounts controlled by the CE.

22. These new bank accounts had been established at a variety of banks around the United States in furtherance of the scheme by U.S.-based members of the CE in the name of shell companies using the names of individuals whose identities had been stolen. The U.S.-based members of the CE would withdraw the money and deposit it into other bank accounts set up under shell companies, also opened using stolen identities. From there, U.S.-based members of the CE would engage in additional financial transactions to transfer the proceeds to foreign members of the CE and to spend their share of the proceeds domestically.

23. According to an FBI Internet Crime Complaint received on December 5, 2022, a company in Fort Payne, Alabama (hereafter "victim company") fell victim to a business email compromise. An email believed by the victim company to be from a known vendor instructed them to send future payments to a Bank of America account number ending in 6873.

24. According to records obtained in response to a legal subpoena to Bank of America, three ACH payments totaling $846,543.26 from the victim company posted to account 6873 in November 2022. Victim proceeds were subsequently withdrawn through a series of check

disbursements, Zelle transfers, and ATM withdrawals. One of the check disbursements, check 1014, was paid to a Lynn Golden LLC for $97,288.00. Check 1014 was deposited to an account at Navy Federal Credit Union ending in 2921 on November 25, 2022.

25. Through a judicially authorized search of a mobile device seized from Nana Amuah upon his arrest, investigators identified Telegram messages regarding the check paid to Lynn Golden LLC for $97,288.00 (money stolen from the victim company). The messages were between Amuah (shown as "Stack Up") and an individual listed as "▮▮▮▮▮." On November 25, 2022, "▮▮▮▮▮" sent an image to "Stack Up" of check 1014 payable to Lynn Golden LLC in the amount of $97,288.00. Later that same day, "▮▮▮▮▮" sent another image to "Stack Up" of a deposit receipt for $97,288.00 to an account ending in 2921 at Navy Federal Credit Union. Below are excerpts from the aforementioned Telegram conversation:



8



26.     According to records obtained from Navy Federal Credit Union through legal subpoena, check 1014 was deposited to account 7142062921 (2921). Account 2921 is a business account in the name of Lynn Golden LLC, opened on May 24, 2022, by individual S.J. The balance of account 2921 as of January 31, 2025, was $97,305.13. None of the proceeds from the $97,288.00 deposit on November 25, 2022, were disbursed between the date of the deposit and January 31, 2025.

## **CONCLUSION**

27.  I respectfully submit that there is probable cause to believe that identified and unidentified subjects have committed criminal violations, including violations of 18 U.S.C. §§ 371, 1343, 1349, 1956, 1957, and 2315. I further submit that there is probable cause to believe that the above-identified monies held by Navy Federal Credit Union constitute (1) proceeds traceable to fraud violations and, therefore, are subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C) and 982(a)(1) and 28 U.S.C. § 2461, and (2) property involved in a violation of 18 U.S.C. §§ 1956, 1957 (Money Laundering, Transactional Money Laundering, and Money Laundering Conspiracy), and, therefore, are subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1).

28.  I am requesting both a civil seizure warrant pursuant to 18 U.S.C. § 981(b) and a criminal seizure warrant pursuant to 21 U.S.C. § 853(f). For purposes of a criminal seizure warrant, an order under § 853(e) may not be sufficient because funds in accounts can be easily withdrawn, moved, or dissipated, leaving them unavailable for forfeiture. The funds were previously held in a Bank of America account that appears to have been operated by "███████," which has prevented the victim company from retrieving its stolen funds directly from Bank of America. If the individual purporting to be S.J. requests funds from account 2921, Navy Federal Credit Union may transfer the funds. This is because restraining orders served on banks sometimes fail to preserve the property for forfeiture, as the bank representative receiving the restraining order fails to put the necessary safeguards in place to freeze the accounts in time to prevent the account holder from accessing the funds electronically, or fails to notify the proper personnel as to the existence of the order, or the bank exercises its own right of setoff to satisfy an outstanding debt owed to the bank by the account holder. Therefore, I submit that a protective order under 21 U.S.C. § 853(e) would

be insufficient to assure that the subject monies will remain available for forfeiture, and a criminal seizure warrant guarantees that they will be in United States custody and control once the warrant is served.

    I swear that this information is true and correct to the best of my knowledge.

                                             /s/ Chelsea Holliday
                                        Special Agent Chelsea Holliday
                                        Federal Bureau of Investigation

Attested to by affiant by reliable electronic means per FRCrP 4.1 on this   28th   of February, 2025.

_____
Matthew A. Stinnett
United States Magistrate Judge

11